UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY R. PERKINS, | CASE NO. 1:04-CV-5806-LJO-DLB-P |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO SEAL DECLARATION OF J. MONTGOMERY |
| v. | |
| D.G. STOCKMAN, et al., | (Doc. 55) |
| Defendants. | FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| | (Docs. 59) |
| | **OBJECTIONS DUE MARCH 13, 2007** |
| _____ / | |

A.  Procedural History

Plaintiff is a state prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint filed June 7, 2004, against Defendants Stockman, McEnroe, Halberg, Hense, Lopez, and Rowland. In his complaint, Plaintiff alleges that defendant McEnroe and Montgomery falsely accused him of being involved in a conspiracy to assault a correctional officer, which ultimately led to his placement and retention in Administrative Segregation by defendants Stockman, Halberg and Hense. Plaintiff alleges these actions were taken in retaliation for his civil complaint against prison officials in *Perkins v. Terhune*, CV 99-20440 JW.

On April 6, 2006, Defendants filed a motion for summary judgment. On April 6, 2006,

1  Defendants also filed a motion to file under seal the Declaration of J. Montgomery in support of their
2  motion for summary judgment. Plaintiff filed an objection to the motion to file declaration under
3  seal and an opposition to the motion for summary judgment on April 26, 2006.
4      Defendants represent that the declaration and attached documentation is confidential and
5  should remain so because disclosure would threaten institutional security and the informants' lives.
6  Based on the sensitive nature of the documents and the fact that the Court's in camera review of the
7  documents will protect plaintiff's due process rights, by separate Order, defendants' motion to seal
8  the declaration of J. Montgomery is granted. The Court notes that other than verifying that plaintiff's
9  name was identified in the confidential documents, the exhibits do not change the analysis set forth
10 in this Order.
11     B.    <u>Legal Standard</u>
12     Summary judgment is appropriate when it is demonstrated that there exists no genuine issue
13 as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.
14 Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

18 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the
19 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made
20 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"
21 <u>Id</u>. Indeed, summary judgment should be entered, after adequate time for discovery and upon
22 motion, against a party who fails to make a showing sufficient to establish the existence of an
23 element essential to that party's case, and on which that party will bear the burden of proof at trial.
24 <u>Id</u>. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's
25 case necessarily renders all other facts immaterial." <u>Id</u>. In such a circumstance, summary judgment
26 should be granted, "so long as whatever is before the district court demonstrates that the standard
27 for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id</u>. at 323.
28     If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

C. Undisputed Facts

1. Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation. Comp. p.1  Plaintiff was convicted of multiple offenses, including two counts of first degree murder under Pen.C. 187(a) and is serving a life sentence without the possibility of parole. Mariorino Dec. Ex. A, AGO 005. On November 7, 1989, he arrived at California State Prison, Folsom, CA (Folsom). *Id, AGO 002.* Plaintiff was transferred to California Correctional Institution (CCI) on September 29, 1992. On November 23, 1994, he was transferred to Calipatria State Prison (Calipatria). *Id.* Next he was transferred to Corcoran on November 21, 1995. Later, he was transferred to Salinas Valley State Prison, on April 16, 1997. *Id.* AGO 003. He then returned to Corcoran on September 16, 1998 but was transferred to California State Prison, Sacramento, CA (Sacramento) on September 14, 1999. *Id.* Finally, on March 26, 2003, he was transferred to Corcoran. *Id.*

2. On June 7, 2004, plaintiff filed his complaint under 42 U.S.C. § 1983, in which he alleged that while incarcerated at Corcoran in 2003, he was placed in Administrative Segregation for approximately ninety-two days in retaliation for filing a lawsuit entitled *Perkins v. Terhune, et.al.,*, Case No. C-99 20440 JW (PR) against correctional officers, none of whom are defendants in this action. *See* Order of Service, 12/13/04.

3. On December 13, 2004, the Court reviewed Plaintiff's complaint for cognizable claims and determined that plaintiff's complaint stated cognizable claims for relief against defendants for retaliation against plaintiff's First Amendment rights to speech or to petition the government. *See id.* at p.3.

4. In 2003, defendant Montgomery, a gang investigator at Corcoran, commenced an investigation after learning of a document that referred to a plan to assault

4

correctional staff at CDCR institutions, including Corcoran. Montgomery Dec., ¶ 3. The document specifically identified a criminal street gang, the Raymond Ave. Crips. *Id.* The document identified a Corcoran inmate (Inmate #1). *Id.* Upon review of the central file of Inmate #1, it was learned that the Raymond Avenue Crips gang was connected to a gang founded in the prison setting (Prison Gang #1). *Id.*

5. *Prison gangs and criminal street gangs are extremely violent and pose a significant threat to the safety and security of prison employees, inmates and civilians. Montgomery Decl., ¶ 2. Inside the prison setting, members of different criminal street gangs are known to join forces with each other to form a stronger coalition, even though they do not associate with each other outside the prison setting or may even engage in violent acts against one another outside the prison setting. Id.*

6. During the investigation, the central file of Inmate #1 revealed that he was a member of the Raymond Avenue Crips and a member of Prison Gang #1. Montgomery Decl. ¶ 3. As a result, the investigation was expanded to locate any inmate currently housed at Corcoran that may be a member or associate of the Raymond Avenue Crips or Prison Gang #1. *Id.*

7. During the course of the investigation, plaintiff was identified as a member or associate of the Raymond Avenue Crips or Prison Gang # 1. *Id.*, ¶ 5. The identification was based on a confidential document that identified plaintiff as a member of a "Crips" gang and a confidential memorandum dealing with the activities of the Prison Gang #1 at Calipatria following an assault on a correctional officer. *Id.* The memorandum identified plaintiff as a member of the Prison Gang #1 and provided a link between plaintiff and the Raymond Avenue Crips. *Id.*

8. During the course of the investigation, a former member of the Raymond Avenue Crips and Prison Gang #1 was interviewed and stated that all members of the Prison Gang #1 were members of the Raymond Avenue Crips. *Id.*, ¶ 6. Moreover, the informant advised defendant Montgomery that inmate #1 was recruiting Crips from different factions to be members of the Prison Gang #1. *Id.* The purpose of this

recruitment was to create a united force that could assault staff in numbers so that the CDCR, was well other inmates, would recognize their power and influence in the prison setting. *Id.*

9. Based on the investigation, plaintiff was placed in Administrative Segregation on July 1, 2003. Maiorino Decl. Ex. A, AGO 006. The CDC Form 114 D Administrative Segregation Placement Notice state that plaintiff was removed from the general population due to his alleged involvement in a conspiracy to assault staff. *Id.* It was determined that plaintiff's presence in general population endangered the security of the institution and jeopardized the integrity of the investigation. *Id.* The CDC 114-D was signed by defendant McEnroe and it was approved on July 2, 2003 by defendant Halberg. *Id.*

10. Plaintiff was removed from general population and placed in Administrative Segregation to eliminate or minimize any involvement that he may have had in the potential threat, because he would no longer have direct contact with other inmates in general population. Montgomery Decl. ¶ 5. Removal of all individuals potentially involved allowed the investigation to go forward without it being compromised or affected by those individuals being investigated. *Id.*

11. On July 9, 2003, plaintiff appeared before the Institutional Classification Committee for his "initial review" following his placement in administrative segregation. Maiorino Dec. Ex. A, AGO 009. The Institutional Classification Committee elected to retain plaintiff in administrative segregation pending the ISU investigation into the alleged involvement in the conspiracy to assault staff. *Id.* Defendants Stockman and Hense served on the Institutional Classification Committee. *Id.*

12. On August 12, 2003, defendant Montgomery issued a general chrono, CDC 128-B, recommending that plaintiff be retained in Administrative Segregation and referred to Institutional Classification Committee for recommendation for transfer to another institution. Maiorino Decl. Ex A, AGO 011. The general chrono stated that during the course of the investigation no information implicating plaintiff in a conspiracy to

6

assault correction staff had been developed. *Id.* Defendant Montgomery made the recommendation because of the information he had obtained during his investigation. Montogomery Decl. ¶ 9.

13. Again, on August 19, 2003, plaintiff appeared before the Institutional Classification Committee where it was decided that plaintiff would be retained in Administrative Segregation pending an administrative review and a possible appearance before the Institutional Classification Committee because his presence in general population would present a danger to the security of the institution. Maiorino Decl. Ex. A, AGO 008. The CDC 114-D was signed by defendant Hense and it was approved on August 23, 2003 by defndant Halberg. *Id.*

14. On August 27, 2003, plaintiff appeared before the Institutional Classification Committee for a "special review." *Id.* AGO 012. Plaintiff's confidential file was noted by the Institutional Classification Committee. *Id.* The Institutional Classification Committee noted that a CDC 128-B General Chrono dated August 12, 2003 provided closure in the ISU investigation of possible conspiracy to assault staff. *Id.* Following its investigation, ISU recommended that plaintiff be transferred to another institution due to his "heavy involvement: with the Raymond Avenue Crips. *Id. AGO 011.* Institutional Classification Committee elected to refer plaintiff to CSR and retain him in administrative segregation. *Id.* AGO 012. Defendants Stockman and Hense served on the Institutional Classification Committee. *Id.*

15. On September 8, 2003, Lt. Rowland issued a general chrono, CDC 128-B, indicating that additional information had been received identifying plaintiff as a member of the Five Six Syndicate Crip gang. *Id.* AGO 011. Based on the information, Lt. Rowland recommended that plaintiff be referred to Institutional Classification Committee for re-housing in general population. *Id.*

16. On October 1, 2003, Plaintiff appeared before the Institutional Classification Committee and was released from Administrative Segregation and returned to general population. *Id.* AGO 013.

7

17. Plaintiff was granted "S" time from July 1, 2003 to the date of his release from Administrative Segregation. *Id.* Thus, "S" time credit was applied to plaintiff's authorized absence from work/training assignment by order the prison administration. Cal. Code Regs. Titl § 3045.3(a). Plaintiff received sentence-reducing credit that would have been earned if he had been able to work, but for his placem3ent in Administrative Segregation. *Id.* AGO 013. Defendants Stockman, Halberg and Hense served on the Institutional Classification Committee. *Id.*

18. Defendant Montgomery contends that during the course of the investigation, he had no knowledge of plaintiff's prior lawsuit, entitled *Perkins v. Terhune*, et.al., Case No. C-99-20440 JW (PR) and at no time acted in retaliation against him because of it. Montgomery Decl. ¶ 11.

19. Defendants contend that at no time was the investigation into the conspiracy to assault staff at Corcoran motivated by plaintiff's prior lawsuit, instead, the investigation was undertaken to eliminate or minimize the potential threat prison gang activity posed to the safety and security of the institution. *Id.*

D.   <u>Retaliation Claim</u>

Plaintiff alleges that he was placed in Administrative Segregation for ninety-two days in retaliation for filing a lawsuit against correctional staff. Plaintiff claims that defendants concocted false accusations that he was involved in a conspiracy to assault correctional staff.

Defendants argue that plaintiff was placed in Administrative Segregation in furtherance of a legitimate penological goal and not for any retaliatory purpose. Defendants contend that during the course of an investigation, plaintiff came to the attention of the investigative officer as potentially being involved in a plan to assault correctional staff. In a proactive measure to prevent any harm coming to the correctional staff, plaintiff was placed in Administrative Segregation.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation

entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Prisons have a legitimate penological interest in stopping prison gang activity. Here, plaintiff does not challenge the procedural aspects of his retention in Administrative Segregation, rather, he contends that he was placed in Administrative Segregation for a retaliatory purpose.

Defendants have presented evidence that defendant Montgomery commenced an investigation after obtaining evidence of a gang related plan to assault prison staff at Corcoran. Montgomery Decl. ¶¶ 2, 3.[1] The document referred to a criminal street gang, the Raymond Ave. Crips and identified a Corcoran inmate, Inmate #1. *Id.* With this information, Montgomery began an investigation by reviewing the central file of Inmate #1 and several confidential reports contained therein. *Id.* By doing so, Montgomery learned that Inmate #1 was connected to a street gang, Raymond Avenue Crips and to a gang founded in prison, Prison Gang #1. *Id.* One of the documents reviewed was a confidential memorandum, several years old, which identified plaintiff as a member or associate of the Raymond Avenue Crips or Prison Gang #1. *Id.* Plaintiff was also identified in a confidential memorandum dealing with the activities of the Prison Gang #1 at Calipatria following the assault of a correctional officer. Montgomery Decl. ¶ 5.[2] This memorandum, also several years old, identified plaintiff as a member of the Prison Gang #1 and revealed a connection to the Raymond Avenue Crips.

---

[1] Plaintiff's objection to paragraph 3 of Montgomery's declaration is overruled. Montgomery attests that at the time of the allegations made in the complaint, it was his responsibility to investigate prison-gang activity in an effort to eliminate or minimize potential their threat. Montgomery attests that because of these duties and responsibilities, he became aware of plaintiff during the course of his investigation of a potential conspiracy to assault correctional staff at Corcoran in 2003. Paragraph 3 describes part of this investigation. The attestation is based on Montogmery's personal knowledge and is therefore properly set forth in the declaration. Fed. R. Civ. P. 56(e); Barthelemy v. Air Lines Pilots Assoc., 897 F.3d 999, 1018 (9th Cir. 1990) (personal knowledge may be inferred from declaration).

[2] Plaintiff's objection to paragraph 5 of Montgomery's declration is similarly overruled. Mr. Montogomery attests that as part of his investigation he reviewed a memorandum which identified plaintiff and based on this review, he became aware of a potential link between plaintiff and the Raymond Avenue Crips. The attestation is based on Montogmery's personal knowledge and is therefore properly set forth in the declaration. Fed. R. Civ. P. 56(e); Barthelemy v. Air Lines Pilots Assoc., 897 F.3d 999, 1018 (9th Cir. 1990) (personal knowledge may be inferred from declaration).

*Id.*

As a result of Montgomery's investigation, plaintiff was removed from general population and placed in Administrative Segregation to eliminate or minimize any involvement that he may have had in the potential threat, because he would no longer have direct contact with other inmates in general population. Montgomery Decl ¶ 5. Removal of all inmates potentially involved allowed the investigation to go forward without it being compromised or affected by those individuals being investigated. *Id.*

Defendants argue that defendant Montgomery only became aware of plaintiff as a direct result of the investigation into the potential threat of assault against correctional staff. Because plaintiff's name surfaced during the investigation, he was placed in Administrative Segregation to maintain the safety and security of the institution. Defendants therefore argue that plaintiff's placement in Administrative Segregation did not violate his constitutional rights as it was only in furtherance of the legitimate penological goals of safety and security.

The Court finds that defendants have met their initial burden of informing the Court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact as to whether plaintiff was placed in Administrative Segregation for a legitimate penological purpose. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Plaintiff alleges that he was placed in Administrative Segregation due to a prior civil lawsuit against correctional staff. Plaintiff disputes defendants' "legitimate penological purpose" by arguing that defendants have "offered no first person summary judgment proof that plaintiff is a valid member of the Raymond Avenue Crips or Bluenote Crip Organization (BNCO) or Consolidated Crip

Organization (CCO)." Plaintiff argues that "Defendant is unable to state one instance of plaintiff's direct involvement with any of these groups or their alleged members" and that "[t]his is a deliberate exaggeration and cover up ."

Plaintiff bears the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808. Plaintiff's conclusory assertions that the defendants' reasons for placing him in Administrative Segregation were fabricated and that defendants' actions were done to retaliate against him are insufficient to meet this burden. Plaintiff cannot and does not dispute that at the relevant time period, defendant Montgomery was involved in an investigation into the potential threat of gang activity against correctional staff at Corcoran. Plaintiff cannot and does not dispute that his name surfaced in connection with this investigation. Indeed, the Court has conducted an in camera review of the evidence submitted under seal by defendants and the "confidential memorandum" to which Montgomery refers as disclosing plaintiff's name, are dated prior to the lawsuit for which plaintiff alleges he was retaliated against. Thus, the document could not have been fabricated in retaliation to plaintiff's lawsuit. Montgomery states and plaintiff does not dispute that all inmates potentially involved in the threat (i.e., potential gang members) were removed from general population to allow the investigation to go forward without it being compromised

In order to survive summary judgment on his retaliation claim, plaintiff must demonstrate that a genuine issue as to any material fact actually does exist with regard to whether defendants' actions furthered a legitimate penological goal. While plaintiff argues that he is not a gang member, he has not demonstrated the existence of a genuine issue regarding Montgomery's investigation which led him to review documents which listed plaintiff as, at a minimum, a potential gang member. Whether or not plaintiff is or was a member of a gang, is not at issue in this case. All inmates which were believed to pose a threat to the institution were placed in Administrative Segregation. Based on Montogmery's investigation, this included plaintiff. After it was determined there was no evidence implicating plaintiff in the conspiracy, he was returned to general population. There is no evidence of a retaliatory motive here, indeed, there is substantial evidence of a legitimate penological motive for plaintiff's placement.

Plaintiff bears the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.  Although plaintiff contends that he was placed in Administrative Segregation in retaliation for "lawfully seeking redress in the Court system," plaintiff has offered no evidence that his placement in Administrative Segregation was to "get even," only conjecture.[3]  He has not demonstrated that but for his lawsuit in, he would not have been place in Administrative Segregation.  Further, plaintiff has not set forth evidence demonstrating that his removal from general population and placement in Administrative Segregation was not motivated by *any* legitimate correctional purpose.

Plaintiff has not met his burden of demonstrating the existence of material factual disputes. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's retaliation claim. Because the Court recommends granting defendants' motion on this basis, it does not address defendants' argument that they are entitled to qualified immunity.

F.      Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed April 6, 2006, be GRANTED

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  On or before March 13, 2007,  the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:      **February 27, 2007**                     **/s/ Dennis L. Beck**
3b142a                                                    UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff's amended complaint and declaration must be based on plaintiff's personal knowledge, not just mere belief, and must set forth facts admissible in evidence to which plaintiff is competent to testify. Johnson, 134 at 1399-1400; Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985) (citation omitted).